WILLIAM MOORE, Appellant, *v.* GEORGE SMITH, Appellee.

APPEAL FROM THE SUPERIOR COURT OF CHICAGO.

A contract for the sale of land, which provides for a forfeiture in case of non-payment of the purchase money, is mutually binding on the parties, even after default in payment has been made, until the vendor has done some act to terminate the contract. After such act has been done, the contract ceases to exist.

A purchaser under such a contract is held, after forfeiture, to be a tenant from year to year, or at will, and is entitled to remove trade fixtures which he may have attached to the freehold, while in possession. Such fixtures pass to the purchaser by a sale of the freehold, unless they are expressly reserved, or belong to the tenant.

Distillery pipes and machinery are trade fixtures, and may be removed by a tenant, who has erected or bought them, at any time while he is in possession.

THE record in this case shows, that on the 31st day of December, 1854, George Smith became the owner in fee of real estate described in the answers of the said Moore and Smith. On the 1st day of February, 1855, Smith made a written contract with one William Ray, to sell him the said real estate upon the following terms: Ray was to pay him $1,649.07 in five years from the 31st Dec., 1854, with interest at ten per cent., payable annually, and all taxes assessed upon the land; to keep the premises insured for $1,100, in Smith's name. If Smith paid the taxes and insurance, the same was to be charged to Ray as part of the purchase money. Smith covenanted to make a deed, upon the performance of the contract by Ray. If Ray made default, he was to be considered the tenant at will of Smith, at a rent equal to twenty per cent. interest. Payment by Ray was made a condition precedent, and time of the essence of the condition.

At some time before the defendant, Moore, made his contract to furnish machinery and fixtures for a distillery, James J. Todd and James McMahon had become interested with Ray, as partners, etc. Ray did not comply with his contract. He paid none of the principal or interest after Dec. 31st, 1858. There was, at the time of the contract with Ray, a building on the premises, which had been fitted up and was in use for a slaughtering and packing establishment.

On the 13th day of June, 1857, William Moore, one of the defendants herein, filed in the Circuit Court of Putnam county, his petition for a mechanics' lien on the premises, buildings, and machinery then situated and being on the same, which Smith had contracted to sell to Ray as aforesaid, against said Ray, James J. Todd, and James McMahon.

This petition was filed under a parol contract, made between Moore, Todd, and McMahon, about the 11th of June, 1856, under which said Moore furnished them with gearing, fixtures, materials, and machinery for a distillery, which they, the said Ray, Todd, and McMahon were erecting, or about to erect, on said premises. The petition is in due form, (as is believed,) and contains an itemized account of all the materials and machinery furnished by Moore, and which were put into the distillery, amounting in the whole to $3,061.95.

On the 9th of December, 1858, Moore obtained a decree for $2,258.95, which was adjudged and decreed to be a lien on the

premises. An order of sale was made, and upon the production of the commissioner's deed, defendants, etc., were ordered to surrender possession to the purchaser.

The property and premises were sold in February, 1859, to Wm. Moore, for $500, and a deed was executed to him by the commissioner who made the sale, all in due form, and which proceedings were approved by the court.

About the —— day of May, 1859, James J. Todd forcibly broke into the distillery, without the consent of Moore or Smith, and detached, removed, tore off, and took away from the building, the copper, lead, brass pipes, and other distillery fixtures, from the sale of which, the money deposited in court by the complainant was derived.

Todd shipped the various articles so taken by him to the complainant, Isaac N. Ash, who sold them for $610.85; and Moore and Smith both claiming the property, or the proceeds of the sale, Moore under his decree and sale under his mechanics' lien, and Smith under his title and claim as owner of the fee, Ash filed this bill to compel them to litigate and settle their respective rights and claims to the money arising from said sale, and which Ash had deposited in court, to await the judgment of the court in the premises.

The court below decided that Smith was entitled to the money, and Moore appealed to this court, and now assigns for error:

1. That the Superior Court of the City of Chicago erred in deciding and decreeing that the said money belonged to the defendant, Smith, and that the same should be paid to him.

2. In not deciding and decreeing that said money belonged to, and should be paid over to defendant, Moore.

N. H. Purple, for Appellant.

T. Dent, for Appellee.

Walker, J. The first question presented is, whether the clause of forfeiture contained in the agreement between Ray and Smith, upon default in payment of the purchase money, converted the possession by the purchaser into a tenancy at will, without any further act of the parties. The agreement contained a provision, that if Ray should make default in any payment of the purchase money or interest, the contract should be forfeited, and that he and his assigns should be tenants at will, at a rent equal to twenty per cent. on the amount of the purchase money, payable monthly. Ray and his partners failed to make the payment falling due December 31, 1858, but it nowhere appears that Smith ever did any act recognizing the occupants as tenants

at will.   Moore became a purchaser of the premises under his decree, and received a deed in February, 1859, but it does not appear that Smith or Moore were in possession in May, when Todd entered and removed the lead, brass and copper pipes, and other machinery used in the distillery, the sale of which produced the money in controversy.

It is certainly true that Moore succeeded to all the rights of Ray, Todd and McMahon in the premises, by his purchase. If the contract of purchase had not then been forfeited, he acquired the right to complete the payment, and enforce a conveyance.   If it had been forfeited, and converted into a tenancy at will, he succeeded to the right to possession of the property, subject to all the terms of the lease.   Then did the default in payment by Ray or his assigns operate of itself to convert the agreement for a purchase, by the clause of forfeiture, into a tenancy, or did it require some act of Smith to produce that effect ?   In the case of *Mason* v. *Caldwell*, 5 Gil. 196, this court held, that a clause inserted in a contract for the purchase of real estate, which provided that should the purchaser fail to pay the money within ten days after it became due, he should forfeit all claim to the lands and money paid thereon, and the contract to be void in law and equity, and the title remain in the vendor as if no sale had been made, was not forfeited by a failure to make the payment.   But that it must have been inserted as a penalty, which the vendor might enforce, to insure a prompt performance of the contract by the purchaser, and that the latter could take no advantage of his own failure to make payment.   And that the contract was mutually binding on the parties until a forfeiture should be declared by the vendor. This principle was again recognized and applied in the case of *Hossack* v. *Caton, ante,* 127.   It is decisive of this question.   Until Smith did some act to terminate the contract of purchase, and to enforce the penalty, it must be regarded as mutually binding on the parties.   He has thus far failed to exercise the right, and until he shall do so, Moore must be regarded as an assignee of Ray and as a purchaser.   To have terminated the contract for the purchase and enforced the forfeiture, he should have manifested the intention by some act of his.   *Chrisman* v. *Miller*, 21 Ill. R. 227.   He has no right to insist, that the contract is binding or is forfeited, as he may choose.   Until he has manifested a design to terminate the agreement, it is binding on the parties, but when that intention is once manifested, it then ceases to exist, and neither of the parties can insist upon its enforcement.

A purchaser let into possession may remove trade fixtures, placed upon the premises by him, at any time during the con-

tinuance of the contract. Such a purchaser, failing to make payment so as to lose the benefit of his purchase, is held to be a tenant from year to year or at will, and therefore entitled to remove fixtures which he may have attached to the freehold while in possession. *Raymond* v. *White*, 7 Cow. 321. And this class of fixtures pass by a sale of the property by the owner, unless they are expressly reserved by the conveyance, or belong to the tenant. *Hitchman* v. *Walton*, 4 Mees. & Welsb. 409; *Colgraves* v. *Dios Santos*, 2 B. & C. 76; *Steward* v. *Lombe*, 1 B. & B. 507; *Oves* v. *Ogilsby*, 7 Watts, 106. It then follows that these fixtures passed to Moore by his purchase under the decree, as no reservation was made. And this was so determined in the case of *Gray* v. *Holdship*, 17 Serg. & Rawle, 413, which was a sale under a mechanics' lien. The rule deducible from the adjudged cases seems to be, that the fixtures must be removed during the continuance of the term, or at least before possession is restored to the owner.

But if this view of the case was incorrect, and Ray and his assignees became tenants, by making default in payment of the purchase money, still they as tenants would have a right to remove trade fixtures, at any time during the continuance of the term. Moore being an assignee, and occupying Ray's position to the purchase, would undoubtedly succeed to this right as well as any other. And until that relation ceased to exist between him and Smith, he had the right to detach the trade fixtures, placed upon the premises by Ray and his partners.

It then remains to ascertain whether the articles removed by Todd fall within that class of things denominated trade fixtures, and which the law authorizes the tenant to remove. The question has undergone much discussion in the courts of Great Britain and this country, but in their decisions there is more harmony than is usually found on such questions. The larger majority of the cases hold, that all erections made for the purposes of trade, during the tenancy, such as soap vats, fire engines to work a colliery, pans used in manufacturing salt, brew-houses, furnaces and coppers, green-houses, hot-houses erected by nurserymen and gardeners, may be removed by the tenant. *Pool's Case*, Salk. 368; *Lawton* v. *Lawton*, 3 Atk. 13; *Lord Dudley* v. *Lord Warde*, Ambler, 113; *Lawton's Ex'rs* v. *Salmon*, 1 H. Blk. 259, in notes; *Miller* v. *Plumb*, 6 Cowen, 665; *White* v. *Arndt*, 1 Wharton, 91; *Guffield* v. *Hapgood*, 17 Pick. 301; *Van Ness* v. *Packard*, 2 Pet. R. 413. In the last of these cases, the Supreme Court held, that a two-story dwelling house, with a brick chimney and foundations, might be removed by a tenant, who had erected it during his term, for the double purpose of being employed as a dwelling and a dairy.

From these authorities, we think there can be no doubt, that the articles removed from the premises in this case, were trade fixtures, that might be removed from the freehold by the tenant, or a purchaser, when placed there by him, if removed before the possession was restored to the owner. These articles having been removed by Todd, one of the assignees of the contract, Moore had the right to affirm the act, and recover the proceeds of their sale, as they passed to him by his purchase. When they were dissevered, they were personal chattels, and Smith had no claim to anything but his real estate, and could consequently assert no right to them, or to the money arising from their sale.

The decree of the court below is reversed, and the cause remanded.

*Decree reversed.*