THE NATIONAL FIRE INSURANCE COMPANY OF HARTFORD

*v.*

THE THREE STATES LUMBER COMPANY.

*Opinion filed October 24, 1905.*

1. INSURANCE—*contract to convey does not make vendor's ownership conditional.* Ownership of property is sole and unconditional, within the meaning of a fire insurance policy, even though the owner has made a contract for the sale of the land, which at the time of the loss had not been performed.

2. SAME—*contract to convey does not create equitable interest.* A mere contract to convey land at some future time upon the performance of certain things by the proposed purchaser does not create an equitable interest in the latter, such as renders the interest of the proposed vendor less than sole and unconditional ownership.

3. REAL PROPERTY—*when proposed vendee does not have possession.* Possession of land under a contract for personal services in cutting timber and making it into lumber for the owner is possession as the agent or representative of the owner and not as a vendee, even though the contract provides that when all timber is manufactured into lumber the party so in possession will be entitled to a conveyance of what land remains unsold, provided certain conditions have been complied with.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Alexander county; the Hon. WM. N. BUTLER, Judge, presiding.

This is an action of assumpsit, begun in the circuit court of Alexander county on January 28, 1903, and brought on an insurance policy, issued by appellant to appellee, bearing date July 5, 1902, insuring the property therein mentioned, being a saw-mill plant situated in Mississippi county, Arkansas. Of the amount insured, part was upon the iron-clad metal roof mill buildings; and a part on the machinery of all kinds; and a part on the engine and boilers. The declaration set out the policy *in hæc verba.* The first plea was the

plea of the general issue. The second and third pleas were pleas of cancellation of the policy. The fourth plea was that the interest of the insured was other than the sole and unconditional ownership of the property. Issue was taken upon the general issue, and upon the second and third pleas, after demurrers thereto had been sustained, and the pleas had been amended. After demurrers and amendments, issue was also taken upon the fourth plea. A jury was waived, and the cause was tried before the court without a jury by agreement. The mill property was burned on September 6, 1902, and, some of the companies declining to pay, suits were brought on the policies at Cairo. There were nine policies, aggregating $14,500.00. Appellee, whose headquarters were in Cairo, Illinois, applied to one Brown, an insurance broker living there, for insurance on said saw-mill plant, and Brown requested one Fisher, an insurance broker at Memphis, to place the insurance, and he procured the policies from the agency of one Doltroff at Wynne, Arkansas. The findings of the court below were against appellant, and on March 14, 1904, judgment was rendered in favor of the appellee, and against the appellant, for $2118.86. An appeal was taken from this judgment to the Appellate Court for the Fourth District, and the latter court has affirmed the judgment of the circuit court. The present appeal is prosecuted from such judgment of affirmance.

Before the issuance of said policy, and on December 17, 1898, a contract was executed between appellee, a corporation organized under the laws of Wisconsin, its successors or assigns, as parties of the first part, and one A. B. Wolverton of Luxora, Arkansas, as party of the second part.

Said contract of December 17, 1898, recites that appellee "is now the owner and is in possession of the hereinafter described land and timber situated in Mississippi county, State of Arkansas;" by the terms thereof, "the said A. B. Wolverton agrees that he will manufacture into lumber for the said Three States Lumber Company, its successors or

assigns, all of the merchantable timber now lying, standing or being on the following described lands, and will deliver the same to said  *  *  *  company  *  *  *  as directed, F. O. B. barge Mississippi river;" (here follows a description of the lands) ; it is therein agreed "that the said A. B. Wolverton will at all times follow the instructions and directions of said Three States Lumber Company, its successors or assigns, or their authorized agents, both in the cutting of said timber and in the manufacture of all lumber to be delivered under the terms of this contract, and said A. B. Wolverton will continue to follow such instructions and directions so long as this contract shall remain in full force and effect; it is particularly understood and agreed that the title to all land and timber heretofore described is and shall remain in said  *  *  *  company  *  *  *  and the title and possession of all lumber manufactured under this agreement remains in said  *  *  *  company  *  *  *  free from all liens, claims, demands and encumbrances of any nature whatsoever;" said company, its successors or assigns, therein "agree to purchase a suitable saw-mill and other equipment, including steel tram and logging road, rolling stock for use on said tram and logging road, log wagons, teams, etc., all of said property to be purchased for the account of said Three States Lumber Company, its successors or assigns, and to be used by said A. B. Wolverton in the manufacture and delivery of all merchantable timber heretofore described;" it is further agreed that "the title and possession to all such property and material is and shall remain in the said Three States Lumber Company, its successors or assigns, and by it entered upon its books for record under name of 'Wolverton Lumber Account;' " it is further agreed "that the said  *  *  *  company  *  *  *  may sell any parcel or parcels of land, on which all merchantable timber shall have been removed under the terms of this contract, and the proceeds of such sale or sales, will be entered upon its books and placed to the credit of 'Wolverton Lumber

Account;' " the said company "agrees to make to said A. B. Wolverton a monthly advance for the payment of all labor and operating expenses not to exceed five dollars per thousand feet; said advance to be made on estimate on all lumber manufactured and in pile on mill yard, according to the terms of contract, which shall have been manufactured during the preceding months, and said estimate to be made by said Three States Lumber Company * * * or its authorized agents and entered upon its books in 'Wolverton Lumber Account;' " it is further agreed that, should the said Wolverton, "in case of death, disability or otherwise fail or neglect to comply with the terms of this agreement, or refuse or delay the cutting of said timber heretofore described, or the manufacture of the same into lumber, then the said A. B. Wolverton agrees that the said Three States Lumber Company, its successors or assigns, may, upon written or verbal notice to him or his legal representatives, enter upon and take possession of all improvements of any and all nature whatsoever, and that they may make such arrangements as they may consider necessary to continue the cutting and manufacture of said timber, and said A. B. Wolverton or legal representatives do relinquish any and all claims they may have had under this agreement to the cutting and manufacture of said timber, and this agreement is canceled, except as to any manufactured lumber then on mill yard, which shall be settled for according to the terms of this contract, and any balance which may be found due A. B. Wolverton or his legal representatives, shall be placed to the credit of 'Wolverton Lumber Account' on books of said Three States Lumber Company, its successors or assigns;" it is further agreed that the said Wolverton "will not manufacture any lumber for any other persons or person during the continuance of this contract, except by written consent of said Three States Lumber Company, its successors or assigns;" it is therein further agreed, that Wolverton "will cut or cause to be cut ten million feet of lumber each year during the con-

tinuance of this contract, until all of said merchantable timber heretofore described shall have been manufactured and delivered to said Three States Lumber Company, its successors or assigns, unless he shall be prevented by fires, floods or other causes over which he has no control;" it is therein further agreed that the appellee, its successors or assigns, "will buy from time to time, as they may elect, additional timber, bought with knowledge and consent of said A. B. Wolverton, and all such timber so bought is to be manufactured for and delivered to said Three States Lumber Company, its successors or assigns, according to and under the terms of this contract;" it is furthermore therein agreed that "when all of the terms of this contract shall have been fully complied with, and all of the merchantable timber heretofore described shall have been manufactured into lumber for and delivered to said * * * company * * * as agreed herein, 'together with any additional timber that may have been purchased under the terms of this contract,' then the said * * * company * * * agrees to quit-claim to said A. B. Wolverton all land remaining unsold under this contract, and will further give to said A. B. Wolverton title to all improvements and personal property that have been purchased by it and remain upon said land, provided there is on its books to the credit of 'Wolverton Lumber Account' a sufficient sum to pay for all land, timber, personal property and improvements at cost of the same, together with all expenses, interest, taxes and assessments thereon; and further provided that such credit shall first be applied on an indebtedness, now owing the said * * * company * * * from said A. B. Wolverton, now amounting to $28,339.29, resulting from his Marked Tree Plant, and balance of credit to be applied under this contract, if sufficient remains to balance account, otherwise to be held by said Three States Lumber Company, its successors or assigns, and applied by them *pro rata* as they may elect, under the terms of this agreement." The agreement then contains provisions for stack-

ing and piling all lumber, manufactured under the contract, above high water, etc., so as to guard against injury to it by fires or floods, and to prevent its being carried away or destroyed thereby; and Wolverton therein agrees that he will carefully watch said lumber from all waste, fires, overflows, freshets, or damages of every kind from the time it is stacked until removed by the company, and that all dimensions of stock, manufactured under the contract, will be piled separately and put up clear, each corresponding width by itself, and that all cottonwood lumber will be measured and inspected, log run, mill culls, and all worthless boards to be thrown out and retained by Wolverton.

MILES FREDERICK GILBERT, (M. M. CRANE, of counsel,) for appellant.

LANSDEN & LEEK, and DAVID S. LANSDEN, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

In this case, three defenses were set up in the trial court, and argued and discussed in that court and in the Appellate Court. One of these defenses was, that there was a cancellation of the policy by the company before the fire under the following provision in the policy, to-wit: "This policy shall be canceled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation." Whether the company gave such notice, and whether it was received by the appellee, were questions of fact, which are settled by the judgments of the circuit and Appellate Courts. The defense, based upon an alleged cancellation of the policy, has been abandoned by the appellant company in this court, and no considerations in support of it are presented in the argument of counsel for the appellant.

The second defense made upon the trial below was, that the interest of the insured at the date of the policy was other than an unconditional and sole ownership. The policy con-

tains the following provision, to-wit: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void, * * * if the interest of the insured be other than unconditional and sole ownership; * * * or if any change other than by the death of the insured takes place in the interest, title or possession of the subject of insurance, (except change of occupants without increase of hazard), whether by legal process, or judgment, or by voluntary act of the insured, or otherwise." It was contended by the appellant in the lower courts that the interest of the appellee, as the insured party, in the property insured was other than unconditional and sole ownership, by reason of the contract made by appellee with A. B. Wolverton on December 17, 1898, as such contract is set forth in the statement preceding this opinion. The appellant, upon the trial below, submitted to the trial court, to be held as law in the decision of the case, certain propositions to the effect that the interest of the appellee was not, at the time of the destruction of the property by fire, that of sole and unconditional ownership; and that the execution of the agreement of December 17, 1898, between appellee and Wolverton, together with the alleged placing of Wolverton in possession of the insured premises, was an act, which so changed the status of ownership, as to be in violation of the clause of the policy as to unconditional and sole ownership. These propositions were marked refused by the trial court, and their refusal presents the only question, which is now urged upon our attention. That question is, whether or not the interest of the insured in the premises was other than an unconditional and sole ownership thereof by virtue of the provisions of such contract.

*First*—It is insisted by the appellant, that the contract of December 17, 1898, is a conditional sale of the property mentioned, and possesses all the characteristics of a bond for a deed, and all the objectionable features of an encumbrance; and that it made the ownership conditional, inas-

much, as when the condition therein specified should be performed, appellee agreed to "quit-claim" to Wolverton "all land" remaining.

If it be assumed, as is contended by the appellant, that the agreement in question is a contract by the appellee for the sale of land to Wolverton, it does not follow, for that reason, that the interest of the appellee in the property insured is other than unconditional and sole ownership. This precise question was decided by this court in *Phenix Ins. Co.* v. *Caldwell,* 187 Ill. 73, where it was held that the execution and delivery of a bond for a deed, even though accompanied by a part payment of the purchase money, was not a sale within the meaning of an insurance policy, requiring the consent of the company to any sale of the property, since the maker of a bond for a deed retains both the legal and equitable title, until the obligee has performed the conditions, which entitle him to demand a conveyance. Where there is a written contract for the sale of land, the vendor retains the legal title. (*Langlois* v. *Stewart,* 156 Ill. 609). As was said in *Langlois* v. *Stewart supra:* "A bond for a deed is only an agreement to make title in the future, and so long as it remains executory the title is vested in the original owner." The rule in this State is, that the vendor is trustee of the title for the benefit of the vendee. (*Sutherland* v. *Goodnow,* 108 Ill. 528; *Fuller* v. *Bradley,* 160 id. 51; *Phenix Ins. Co.* v. *Caldwell, supra*). If, therefore, the agreement here under consideration is a contract for the sale of land by the appellee to Wolverton, the legal title to the property remained in appellee as vendor, and was held by appellee as trustee for the benefit of Wolverton.

In addition to this, the contract of December 17, 1898, expressly provides that "the title to all land and timber heretofore described is, and shall remain, in said Three States Lumber Company, its successors or assigns, and the title and possession of all lumber manufactured under this agreement remains in said Three States Lumber Company, its

successors or assigns, free from all liens, claims, demands and encumbrances of any nature whatsoever." The agreement also provides, as to the property to be purchased in the future by the company, that "the title and possession to all such property and material is and shall remain in the said Three States Lumber Company, its successors or assigns." The agreement also provides that said company, its successors or assigns, "may sell any parcel or parcels of land, on which all merchantable timber shall have been removed under the terms of this contract;" and the company only agrees to quit-claim to Wolverton "all land remaining unsold under this contract," when its terms have been fully complied with, and all of the merchantable timber therein described shall have been manufactured into lumber, and delivered to the company as agreed therein, together with any additional timber that may be purchased under the terms of the contract. The provisions, that the title and possession were to remain in the company, and that the company was to have the right to sell any portion of the land from which the timber should be cut off, indicate that the unconditional and sole ownership of the property remained in the company, so far as the legal title was concerned.

*Second*—It cannot be said that, under the terms of this contract, the equitable title was thereby invested in Wolverton. A mere contract to convey at a future time upon the performance of certain acts by the purchaser does not create an equitable title. "It is but an agreement that may ripen into an equitable title. When the purchaser performs all acts necessary to entitle him to a deed, then, and not till then, he has an equitable title, and may compel a conveyance." (*Chappell* v. *McKnight,* 108 Ill. 570; *Walters* v. *Walters,* 132 id. 467). This question has arisen in connection with the subject of a widow's dower. It is held that a widow may have dower in the equitable estate of her husband in real property; but it has also been held that, where there is a contract for the sale of land, a husband, who is the vendee

in such contract, has no such equitable interest in the property, as will entitle his wife to an inchoate right of dower therein, until he has made all the payments for purchase money, as required by the contract, so that nothing remains to be done except the execution of a deed to him. (*Greenbaum* v. *Austrian,* 70 Ill. 591; *Walters* v. *Walters, supra*). Before the purchaser under a contract of sale has performed all the conditions required of him by the contract, he does not really have an equitable title to the property described in the contract. In the case at bar, the proof shows that, in view of the quantity of land from which timber was to be cut by the terms of the contract, and in view of the amount of timber which it was possible to cut therefrom per day, it would take some twelve years or more before Wolverton could comply with all the terms of the contract. He was not entitled to a quit-claim deed of the part of the property remaining unsold, until all the terms of the contract had been fully complied with, and all of the merchantable timber described thereon had been manufactured into lumber and delivered to the appellee. As this period had not arrived at the time the property was destroyed by fire on September 6, 1902, he had no equitable title to the property.

*Third*—In addition to this, the contract shows that the interest of Wolverton to be acquired by the terms of the contract in the property was remote and contingent. Not only was the timber to be cut from the land and manufactured into lumber and delivered to the appellee, but certain advances, that had been made or were to be made, and certain indebtedness, due from Wolverton to the appellee, were to be paid off. All this work had to be done, and these advances and indebtedness had to be paid, before the appellee would be obliged to convey to Wolverton the land remaining unsold, and the improvements remaining on the unsold land. This feature of the contract brings the case within the doctrine, announced in *Security Ins. Co.* v. *Kuhn,* 207 Ill. 166, which was an action in assumpsit on an insurance policy,

containing a provision that it should be void, "if the interest of the insured be other than unconditional and sole owner-ship, or if the subject of insurance be a building on ground not owned by the insured in fee simple;" and where the defense was that the interest in the plaintiff in the property insured was not that of unconditional and sole ownership, and the ground on which the building was situated was not owned by him in fee simple; and it was there held that the widow, suing upon the policy, who took an equitable life estate as devisee, and the legal title as executrix and trustee, had a fee simple title within the meaning of the policy; and it was there further held that—as to the interest of the plaintiff which was limited upon her death, or the uncertain event of her re-marriage, and to dubious and uncertain persons, who should be living and able to take the property at her death, so that it could not be known who, if any, would be the surviving child or children, or the issue or descendant of any such child, to receive the future contingent interest, no one having a present vested estate or insurable interest except the plaintiff—"in the action at law she must be re-garded as the sole and unconditional owner in fee simple, although the property in her hands or the proceeds of the insurance are impressed with a trust, which a court of equity will compel her to execute."

*Fourth*—It is said, however, by the appellant that Wol-verton was put into possession of the property, and that the possession did not remain with appellee as vendor. It is sought to distinguish the case of *Phenix Ins. Co.* v. *Cald-well, supra,* from the case at bar, upon the alleged ground that, in the former case, the vendee under the contract of sale was not put into possession of the property, whereas here it is said that the vendee had the possession. A careful ex-amination of the contract will show that really the possession remained with appellee, the owner of the property. Wolver-ton's possession was not that of owner or purchaser. Appel-lee put him in possession of the mill, in order that he might

manufacture into lumber the timber, furnished to him by the appellee. He was merely the agent or representative of the appellee in the management of the property for the purpose of manufacturing the timber into lumber. The contract not only provides in express terms that the title of the property then on hand, and to be subsequently purchased, should remain in appellee, but also that the possession of the same should remain in appellee. The latter also was given the right to sell any and all of the land, whenever the timber should be removed from it. As to Wolverton, the contract was a personal one; that is to say, a contract for his personal services. He was to perform the duty of manufacturing the timber into lumber. That duty he was obliged to perform, not as the owner or purchaser of the property, but as the representative of the appellee.

*Fifth*—It cannot be said that there was any change of the interest of the appellee in the property after the issuance of the policy of insurance. The policy bears date July 5, 1902. When it was issued, the contract with Wolverton already existed, it having been executed on December 17, 1898. Therefore, the interests both of the appellee and of Wolverton under the contract existed when the policy was issued. It is not shown by any testimony in the record, to which our attention has been called, that any written application was made by appellee for the policy of insurance, upon which this suit is brought. Consequently, appellee made no representations as to the nature or character of its interest in the property when the policy was issued to it; nor does it appear that any inquiry was made by the appellant, or its agents, of appellee as to the nature of the latter's interest in the property. Consequently, there could have been no misrepresentation on the part of appellee as to the extent or character of its interest.

The third defense made below, that appellee concealed the existence of the contract with Wolverton at the time of the issuance of the policy, becomes immaterial, because, in

the view here taken, appellee's interest under the contract was not less than unconditional and sole ownership of the property.

In *Manchester Fire Assurance Co.* v. *Abrams,* 89 Fed. Rep. 932, it was said by the United States Circuit Court of Appeals of the Ninth Circuit: "Sound reason as well as the weight of authority inclines us to the view that, where the assured has an insurable interest in the property, and in good faith applies for insurance upon the same, and makes no actual misrepresentation or concealment of his interest therein, and the insurance company refrains from making inquiry concerning his interest, and issues a policy to him, and accepts and retains his premium, the company must be presumed to have knowledge of the condition of his title, and to assure the property with such knowledge. * * * In the case at bar, there can be no question that the defendant in error insured the property in good faith as his own. He was asked no questions concerning his title. The condition in the policy, which it is claimed renders it void, was one of the numerous printed conditions, which the policy contained when it was delivered to him. The law does not favor forfeiture. The contract issued and prepared by the insurance company is made for its own protection, and must be construed most strongly against it." (See also *Philadelphia Tool Co.* v. *British American Assurance Co.* 132 Pa. St. 236; *Western Assurance Co.* v. *Mason,* 5 Ill. App. 141; *Miotke* v. *Milwaukee Mutual Ins. Co.* 113 Mich. 166; *Traders' Ins. Co.* v. *Pacaud,* 150 Ill. 245; *German Ins. Co.* v. *Gibe,* 162 id. 251; *Lycoming Fire Ins. Co.* v. *Jackson,* 83 id. 302). As, therefore, appellee, under the contract with Wolverton, retained the legal and equitable title, and the possession of the property, its interest was not thereunder less than a sole and unconditional ownership.

Counsel for appellant substantially admit that, if the case of *Phenix Ins. Co.* v. *Caldwell, supra,* is to stand as the law of this court, the decision there made disposes of the defense

here set up; but counsel strenuously urge that the decision in the *Caldwell case* is not in harmony with many decisions in other States upon this point, and that it ought to be overruled. After a careful consideration of the able argument of counsel, we see no reason for changing, or retreating from, the views expressed in the *Caldwell case.*

For the reasons above stated, the judgment of the Appellate Court, affirming the judgment of the circuit court, is affirmed.