Cornelius Mackey et al., Appellees, v. William Sherman et al., Appellees.

Appeal of Traders Investment Company, Appellant.

Gen. No. 35,080.

110

Opinion filed October 19, 1931.

JOSEPH F. GROSSMAN, for appellant.

ELLIS & HACKETT, for appellees.

MR. JUSTICE MATCHETT delivered the opinion of the court.

This is an appeal from a decree entered upon defendant's cross-bill by which the Traders Investment Co., as assignee of the contractor, sought to establish a mechanic's lien against certain premises known as 5012 South Michigan avenue in the City of Chicago. The cause was heard upon exceptions to the report of the master to whom the cause had been referred. All the exceptions but one were overruled, the report of

the master was otherwise confirmed and the cross-bill dismissed for want of equity.

The facts are not in dispute. On March 12, 1928, defendants to the original bill, William Sherman and Lillie Sherman, were in possession of the premises in question under a written agreement made March 15, 1927, with the original complainants, Cornelius Mackey and Mary Louise Mackey. The premises were improved by a brick and stone residence. On March 12, 1928, without the knowledge, consent or approval of the Mackeys, the Shermans made an agreement with the Craft Construction Co., assignor of the Traders Investment Co., cross complainant, to make certain repairs in the basement of the premises for a consideration of $1,375.48. The Construction Co. completed its work and furnished extra labor and material to the amount of $75.88 at the request of the Shermans. The last work done and delivery made was on March 23, 1928. On that date the claim was assigned to the cross complainant. There is a balance due of $1,280.86, with interest from July 23, 1928.

The agreement for the purchase of the premises was not fulfilled by the Shermans, and the Mackeys, as original complainants, filed their bill praying for a specific performance of the agreement. The cause was put at issue and referred to the master, who reported in favor of complainants, and a decree in their favor was entered on January 14, 1929.

The decree found due to the Mackeys from the Shermans the principal amount of $14,615, with $401.88 as interest, and other items for taxes, etc., making a total sum due of $15,778.42, which the decree directed the Shermans to pay within 30 days. The decree directed that the Shermans pay the mechanic's lien claim of cross complainant, and the lien was found to be a cloud upon the title to the property. The decree also provided that the contract or agreement should be can-

celled and the lien removed as a cloud; that if the Shermans complied with these provisions of the decree, then the Mackeys should execute and deliver a deed of conveyance; that otherwise the Shermans should surrender possession of the premises within a time fixed by the court.

By agreement of the parties their rights under the cross-bill were reserved for adjudication upon further report of the master.

The solicitor for cross complainant says that but one point is urged, namely: "Where a contract for the sale of real estate has been entered into, and the vendee has ordered an improvement without the consent or knowledge of the vendor, is the interest of the vendor to any extent subject to the lien of the mechanic?" It is contended in behalf of cross complainant that in equity the vendee is the owner and the vendor an incumbrancer in the nature of a purchase money mortgagee, and that therefore the claimant has a lien against the property, prior and superior to the interest of the vendor to the extent that the property has been enhanced in value by the improvement, as provided in section 16 of the Mechanics' Liens Act, Cahill's St. ch. 82, ¶ 16. Section 1 of that act (see Cahill's St. ch. 82, ¶ 1; Smith-Hurd's Ill. Rev. Stats., chap. 82, sec. 1, p. 1812) provides:

"That any person who shall by any contract or contracts, express or implied, or partly expressed or implied, with the owner of a lot or tract of land, or with one whom such owner has authorized or knowingly permitted to contract for the improvement of, or to improve the same, . . . shall have a lien upon the whole of such lot or tract of land and upon the adjoining or adjacent lots or tracts of land. . . . This lien shall extend to an estate in fee, for life, for years, or any other estate or any right of redemption, or other interest which such owner may have in the lot or

tract of land at the time of making such contract or may subsequently acquire therein. . . .''

Section 16 of the same act provides:

''No incumbrance upon land, created before or after the making of the contract under the provisions of this act, shall operate upon the building erected, or materials furnished until a lien in favor of the persons having done work or furnished material shall have been satisfied, and upon questions arising between incumbrancers and lien creditors, all previous incumbrancers shall be preferred to the extent of the value of the land at the time of making of the contract, and the lien creditor shall be preferred to the value of the improvements erected on said premises. . . .''

Cross complainant relies upon the case of *Moore v. Smith*, 24 Ill. 512, which was reconsidered and, as it says, corrected in 26 Ill. 392. That case first came before the Supreme Court of Illinois at the April term, 1860. It appeared that Smith, the owner in fee of real estate, made a written contract with one Ray to sell the real estate to him at a given price, payments to be made in five years from December 31, 1854, with interest payable annually, and Ray to pay all taxes assessed upon the land and keep the premises insured in Smith's name. Smith covenanted to make a deed upon the performance of the contract by Ray, and if Ray defaulted he was to be considered the tenant at will of Smith at a rent equal to 20 per cent interest. Payment by Ray was made a condition precedent, and time of the essence of the condition. There was at the time of the contract a building on the premises which was used as a packing establishment. On June 13, 1857, Moore, who had a contract to furnish machinery and fixtures for a distillery, filed a petition for a mechanic's lien on the premises, and on December 9, 1858, obtained a decree, which so adjudged. There was an order of sale, and in February, 1859,

Moore purchased for $500 and a deed was executed to him by the commissioner who made the sale. In May, 1859, one Todd broke into the distillery without the consent of Moore or Smith and took away the distillery fixtures. He shipped the articles to the complainant Ash, who sold them for $610.85. Moore and Smith both claimed the property or the proceeds thereof, Moore under the decree and sale, and Smith under his title as owner of the fee. Ash filed a bill of interpleader to compel them to settle their differences. The trial court decided that Smith was entitled to the proceeds. The court said that the first question was whether upon default in payment by Ray the possession by the purchaser was converted into a tenancy at will without any further act of the parties; that Smith had never in any way recognized the occupants as tenants at will; that it did not appear that Smith or Moore was in possession when Todd entered and removed the fixtures; that Moore succeeded to all the rights of Ray, Todd and one McMahon in the premises by his purchase; that if the contract of purchase had not been forfeited, he acquired the right to complete the payment and enforce a conveyance; that if it had been forfeited and converted into a tenancy at will, he succeeded to the right to possession of the property, subject to all the terms of the lease. The court held that a mere default in payment did not forfeit the contract and that the contract was mutually binding until a forfeiture should be declared by the vendor; that the vendor had failed to exercise the right, and that until he did so Moore must be regarded as an assignee of Ray and as a purchaser; that a purchaser let into possession might remove fixtures placed upon the premises by him at any time during the continuance of the contract, and that such a purchaser, failing to make payment so as to lose the benefit of his purchase, was a tenant from year to

year or at will and therefore entitled to remove fixtures which he might have attached to the freehold while in possession. *Raymond v. White,* 7 Cow. 319, 321, was cited. The decree was reversed and the cause remanded. On further proceedings in the trial court Moore had judgment and Smith appealed to the Supreme Court. The cause was heard at the April term in 1861. *Smith v. Moore,* 26 Ill. 392. The court stated that it had been asked to review the decision announced in 24 Ill. 512, and cheerfully did so; that it had been held on the first appeal that a purchaser of land by an executory contract and let into possession, had the right to remove the improvements placed upon the premises subsequent to the purchase; that having ratified their removal by another, he was entitled to the proceeds for which they were afterwards sold; that it was urged upon argument that such a purchaser occupies to the vendor the relation of a mortgagor and as such had no right to remove either prior or subsequent improvements from the premises, and that whatever was placed upon the land, if permanent in its nature, became a part of the land itself and might not be severed by the purchaser. The court said that the prior decision had been based upon *Raymond v. White,* 7 Cow. 319, 321, but that upon this hearing the attention of the court was called to numerous cases holding that the relation which the purchaser of land under an executory contract occupied to the seller was that of a mortgagor. (*Boone v. Chiles,* 10 Pet. 177, 224; *Crockford v. Alexander,* 15 Ves. 138.) The court further said:

"After a careful examination of these cases, together with others not referred to, we are satisfied that the rule is well settled, *that for some purposes, and to some extent,* he may be held to be an equitable mortgagor. But we do not understand these cases as asserting the doctrine that *to all purposes,* and to the

full extent, he is a mortgagor. His relation is in some respects similar, and in others entirely different, and we can only say, that the relation of the parties to each other is that of vendor and vendee, with the rights and obligations which that relation imposes.''

The court said that the then 20th section of the mechanics' lien law gave a lien to the mechanic or material man upon the improvements and materials superior to that of the prior incumbrancer; that under the latter section the person holding the prior lien must look alone to the property as it was before the mechanic's or material man's lien attached, and that the lien claimant must look to the improvement or materials, unless the proceeds of the sale was sufficient to satisfy both, or there was a surplus of either fund, which, if necessary, might be applied to the satisfaction of the other lien. The decree was therefore affirmed upon the authority of *Gaty v. Casey,* 15 Ill. 189.

Cross complainant points out that the doctrine of the *Smith v. Moore* case has become deeply rooted in the Illinois law, and a long line of cases is cited to that effect. Among these are *Smith v. Price,* 42 Ill. 399 (where the court said that the premises were in fact the property of the plaintiff vendee subject to the lien of the defendant vendor for the unpaid balance of the purchase money), and *Lombard v. Chicago Sinai Congregation,* 64 Ill. 477 (where the relationship of vendor and vendee was thoroughly discussed). *Baldwin v. Pool,* 74 Ill. 97; *Wright v. Troutman,* 81 Ill. 374; *Hutchinson v. Crane,* 100 Ill. 269; *Sutherland v. Goodnow,* 108 Ill. 528; *Fuller v. Bradley,* 160 Ill. 51; *Lewis v. Shearer,* 189 Ill. 184; *Forthman v. Deters,* 206 Ill. 159; *Rhodes v. Meredith,* 260 Ill. 138; *Waggoner v. Saether,* 267 Ill. 32; *Ward v. Williams,* 282 Ill. 632; *Miedema v. Wormhoudt,* 288 Ill. 537; *Davidson v. Dingledine,* 295 Ill. 367; *Voris v. McIner,* 339 Ill. 340,

are also cited. The law in all these cases is based upon the maxim of equity which regards that as done which ought to be done.

Cross complainant contends, however, that *Hickox v. Greenwood,* 94 Ill. 266, is directly contrary to these cases. In that case Hickox, the owner of the fee, contracted to sell to Peat, payment to be made in instalments. Peat paid the first instalment and went into possession and fenced the ground. He then made a contract with Greenwood to build a house on the lot. Greenwood began his work and had it partly completed when Hickox and Peat entered into an agreement that Hickox would advance Peat $230 on a credit of 10 years, and Hickox executed a bond by which he agreed to convey the lot upon the payment of the loan and the purchase price amounting to $430. Upon a bill filed by Greenwood to foreclose his lien, a decree was entered finding that $495.85 was due to him and that $250.08 was due to Hickox. Peat was ordered to pay both sums, and it was provided that in case of his default in these respects, the premises should be sold and the amounts due Hickox and Greenwood paid *pro rata.* Hickox appealed. Greenwood relied on section 17 of chapter 82 of the Revised Statutes of 1874, which (substantially like our present statute) provided that no incumbrance created before or after the making of the building contract should operate upon the building until the mechanic's lien was satisfied, and that in such case the previous incumbrance should be preferred to the amount of the value of the land. The court said that the interest of Hickox was not a mere incumbrance. He was the owner of the fee and must be paid the purchase price before required to surrender the title. The contract was with Peat. The lien of Greenwood was therefore on the interest of Peat, not on the fee held by Hickox; that the legislature in using the term ''incumbrance'' had

in mind the matter which was made subject to the mechanic's lien. Peat was the owner only in the sense of the statute. As to the $230 loaned by Hickox to Peat after the building contract was made, his lien was subordinate to that of Greenwood. The *Smith* case is not referred to in the opinion of the court, but the *Hickox* case has been repeatedly recognized.

In *Henderson v. Connelly,* 123 Ill. 98, the Supreme Court said that it was entirely satisfied with the laws laid down in the *Hickox* case, but that it was not applicable there, because the contract of sale provided that the vendee should construct a building, on account of which a lien was claimed. In *Paulsen v. Manske,* 126 Ill. 72, it was held that the vendee was the owner within the meaning of the statute so that he could subject his interest to the Mechanics' Liens Act; that within the sense of the statute the vendee was the owner to the extent of the interest he owned, and that the vendor having authorized the erection of the improvement, his interest also was subject to the lien. *Hickox v. Greenwood* was, however, cited and approved.

In *Williams v. Vanderbilt,* 145 Ill. 238, a lessee made improvements on demised premises under contract with the lessor. The Supreme Court said, citing the *Hickox* case, that the party with whom the contract was made was regarded as the owner to the extent of the interest he owned, and that it was that interest which was subjected to the lien and the interest of the landlord was not subject to the lien in the absence of the authorization of the improvements by him. In *Granite City Lime & Cement Co. v. Pitzman,* 161 Ill. App. 228, it was held that trustees who had contracted to sell lands were not incumbrancers within the meaning of section 16 of the Mechanics' Liens Act, Cahill's St. ch. 82, ¶ 16, but that having knowingly permitted improvements to be made by the vendee prior to his

having made payments under the contract, their interest in the land was subject to the lien under section 1 of the act.

Cross defendants also cite *Capps v. National Union Fire Ins. Co.*, 318 Ill. 350, which, however, was an action at law in assumpsit on a fire insurance policy. It was there held that a vendee under an executory contract of sale had neither the legal nor equitable title to the property covered by the contract, and a judgment in his favor was reversed. In *National Fire Ins. Co. v. Three States Lumber Co.*, 217 Ill. 115, it was held that a contract to convey did not make the ownership of the vendor conditional so as to prevent recovery on a fire insurance policy. In *Roberts v. Willmering*, 220 Ill. App. 620, it was squarely held by the Appellate Court of the second district that an owner who contracted to sell retained both the legal and equitable title and was not a creditor, incumbrancer or purchaser within the meaning of the Mechanics' Liens Act.

As a matter of fact cross complainant rests its case on the fundamental maxim of equity that equity looks upon that as done which ought to be done. (Story's Equity Jurisprudence, 14th Ed. vol. 1, sec. 81.) Or if we adopt a more comprehensive statement (Pomeroy's Equity Jurisprudence, 4th Ed., vol. 1, sec. 364); "Equity regards and treats that as done which in good conscience ought to be done." The maxim so defined seems to be regarded as the foundation of all distinctively equitable property rights, equitable assets and interests, both real and personal. As an immediate effect of this principle, contracts to purchase and sell lands made upon a valuable consideration and in other respects complying with the requisites prescribed by equity, as soon as executed and delivered, give to the vendee an equitable estate in the land, subject simply to a lien in favor of the seller as security

for the payment of the price, while the vendor becomes equitable owner of the purchase money. (Pomeroy's Equity Jurisprudence, vol. 1, sec. 372.) This is the doctrine of equitable conversion and is generally accepted and fully recognized by the decisions of the courts of this state upon which the cross complainant relies. While generally true, it by no means follows that the rule is without its exceptions. As stated in Story's Equity Jurisprudence, 14th Ed., vol. 1, sec. 81:

"There are exceptions to the doctrine where other equitable considerations intervene, or where the intent of the parties leads the other way; but these demonstrate, rather than shake, the potency of the general rule." (*Craig v. Leslie,* 16 U. S. 563.)

Unlike the *Smith* case, upon which cross complainant relies, the record in this case discloses the terms and conditions of the agreement providing for the conveyance of the premises. In the first place, it discloses that the agreement to convey was conditional upon the payment by the Shermans and the performance by them of the covenants mentioned in the contract. The agreement further provided that the Shermans should not and would not suffer or permit any mechanics' liens to attach against the premises or improvements thereon; that every contract for repairs and improvements should contain an express, full and complete waiver and release of all liens or claims for liens against the premises, and that no contract, either oral or written, should or would be executed by the Shermans for repairs or improvements upon the premises, except that the same should contain such express waiver or release of lien by the party furnishing the labor or material, and that these should be promptly delivered to the bank named for the benefit of the Mackeys; that the agreement would not be transferred or assigned without the previous written consent of the Mackeys; that no right, title or interest,

legal or equitable, in the premises should vest in the Shermans until the delivery of a deed or until full and complete payment of the purchase price should have been made; that the contract should not be filed with the recorder of deeds and if filed should become null and void, cancelled and discharged; that the Shermans should keep the improvements on the premises insured against loss by fire, and that upon failure of the Shermans to perform the covenants, the contract might be forfeited at the option of the Mackeys; that upon the termination of the contract by lapse of time, forfeiture or otherwise, all improvements should belong to and become the property of the Mackeys; that the covenants therein contained should extend to and be obligatory upon the heirs, executors, administrators and assigns of the parties.

If there is a case holding that a court of equity will apply and enforce the doctrine of equitable conversion under a contract in which the intention of the parties is clearly and definitely expressed that it shall not be applied, that case has not been called to our attention. Cross complainant says that defaults of the vendee were waived by payment of subsequent instalments. *Stow v. Russell,* 36 Ill. 18; *Monson v. Bragdon,* 159 Ill. 61; and *Plummer v. Worthington,* 321 Ill. 450, are cited. There is no doubt of that fact. The filing of the bill for specific performance takes away any uncertainty upon that point, but the default to pay the amount found due under the decree is established by uncontradicted evidence and makes further discussion of the point unnecessary. It is urged that the provision of the contract that the vendee would not suffer a mechanic's lien to attach does not affect the rights of the lien claimant, and *Huebner v. Kernajzer,* 259 Ill. App. 540, is cited to that point. The opinion of the court states this rule which was correct under the facts there appearing. There was in that case no

question of the vendor's rights as against a lien claimant upon a contract made with the vendee; on the contrary, the rights of the holder of a prior trust deed were considered a matter for which the mechanics' lien statute specifically provides. *Carey-Lombard Lumber Co. v. Jones,* 187 Ill. 203, is also cited, but is not applicable. That case holds that a lessor stipulating in a lease for improvements to be made on the premises, subjects his interest in the premises to mechanics' liens arising out of the improvements.

Cases almost innumerable are cited to the point that the provision that no legal or equitable title or interest should vest in the vendee is repugnant to the essence of the contract and therefore void. *Rice v. Webster,* 18 Ill. 331, is one of the cases cited. None of them is applicable for reasons which are apparent upon a casual examination. We have considered the numerous authorities cited, desiring to give to this case the fullest consideration. It might have been easily disposed of by the citation of *Roberts v. Willmering,* 220 Ill. App. 620, holding that the law with reference to the creation of a lien under the mechanics' lien law is strictly construed against such right. (*Cronin v. Tatge,* 281 Ill. 336; *Liese v. Hentze,* 326 Ill. 633; *Crowen v. Meyer,* 342 Ill. 46; *Schoenberg Mfg. Co. v. Broadway Central Hotel Corp.,* 259 Ill. App. 40.)

After all the matter resolves itself into a question as to what was the intention of the legislature in the enactment of the Mechanics' Liens statute. If it had been the intention to subject the rights of vendors to liens of this kind, notwithstanding the contract for improvements was made without their knowledge, acquiescence or authority, the legislature would have said so.

The decree is affirmed.

*Affirmed.*

O'CONNOR, P. J., and McSURELY, J., concur.