DRUCILLA B. FULLER *et al.*

*v.*

LYDIA BRADLEY.

*Filed (on rehearing) at Ottawa Oct. 11, 1895—Reh'ng denied Mar. 10, 1896.*

1. TRUSTS—*vendor and purchaser are, in equity, trustees for each other.* Equity regards the vendor of lands, from the time of the contract, as holding the land in trust for the vendee, and the vendee as holding the purchase money in trust for the vendor.

2. SPECIFIC PERFORMANCE—*when awarded to a widow against her husband's heirs.* A widow who becomes entitled to a purchase money note forming part of her husband's estate, and delivers it to the maker in consideration of his transfer to her of a bond for title given by a prior owner of lands transferred to her husband, is entitled to enforce specific performance of such bond as against her husband's heirs, since she becomes entitled to all the remedies of the original holder of such bond.

APPEAL from the Circuit Court of Peoria county; the Hon. THOMAS M. SHAW, Judge, presiding.

The original bill in chancery herein was filed on December 10, 1891, in the Peoria county circuit court, by Lydia Bradley, the appellee, for the purpose of compelling the conveyance to her of an undivided one-eighth interest of lot 29, range 2, Moss' addition to the city of Peoria. She claimed in her bill to be the equitable assignee of a bond for a deed to the whole of said lot. It was stated in said bill that on May 1, 1852, William S. Moss was the owner in fee of the lot, and that on that day he executed and delivered to William Hughes a bond for a deed, "whereby he agreed to convey said lot to said William Hughes upon the payment of $1500, due ten years after date, with interest at the rate of six per cent per annum, payable annually in advance, and took the note of said William Hughes of the same date, in the sum of $1500, due ten years after date, with interest at the rate of six per cent per annum, as evidence of said indebtedness." The defendants below, appellants here, answered

the bill, admitting some and denying other of its allegations. They denied that appellee was the owner of or had any title or claim to the share of an undivided one-eighth part of said lot 29 that had belonged to Sarah Bradley, deceased, and claimed that they, appellants, were the owners of such share. They also filed a cross-bill for partition of said lot, and for other relief. Issues were formed upon the original and cross-bills. There was a reference to the master in chancery, and he reported back to the court the proofs taken in the cause and his conclusions thereon. There were exceptions to the report, interposed by appellants. Such proceedings were had at the hearing before the chancellor as that a decree was rendered requiring the adult defendants in the original bill to convey within sixty days, to appellee, the premises in controversy, and that in default of their so doing the master should convey, and directing the master to convey for the defendants in said bill who were minors, and dismissing out of court the cross-bill of appellants.

The facts of the case are substantially as follows: On May 1, 1852, one William Hughes executed and delivered to William S. Moss his promissory note of that date for $1500, due ten years after date, with interest at the rate of six per cent per annum, payable annually, in advance. In consideration thereof said Moss, the owner in fee of lot 29 in question, executed and delivered to Hughes his bond for a deed, of the same date, whereby he agreed to convey said lot to said Hughes upon the payment of the said note and interest. On May 18, 1860, Moss sold and endorsed the note "without recourse" to Pliny Curtiss, and on the same day made and delivered a deed of the lot to Nathaniel B. Curtiss. The deed contained the following reservation: "Subject, nevertheless, and notwithstanding the covenants hereinafter made, to the terms and conditions of a certain bond for a deed made by William S. Moss to William Hughes, dated May 1, A. D. 1852, as by reference to said bond will fully appear." On May

31, 1860, Nathaniel B. Curtiss and wife made a quit-claim deed of the premises to said Pliny Curtiss. On September 4, 1861, Pliny Curtiss and wife conveyed the lot, by warranty deed, to Tobias S. Bradley, and on the same day he endorsed the note "without recourse," and delivered it to him. On May 4, 1867, Tobias S. Bradley died intestate, leaving surviving him his widow, the appellee herein, and one brother, Cincinnatus Bradley, and three sisters, Drucilla B. Fuller, Mary K. Gray and Sarah Bradley, as his only heirs-at-law. The last named sister, Sarah Bradley, was an insane woman. On November 14, 1868, Cincinnatus Bradley and his wife conveyed to appellee the undivided one-eighth part of all the lands of which Tobias S. Bradley died seized. On November 25, 1868, Drucilla B. Fuller and her husband executed to appellee a quit-claim deed of all the title and estate which they, or either of them, inherited in lands of which Tobias S. Bradley died seized, but the deed expressly excepted any interest or estate in the property which the grantors might inherit or purchase from any person other than Tobias S. Bradley. On August 2, 1868, Mary K. Gray made to appellee a similar quit-claim deed, containing like exceptions. On May 13, 1867, letters of administration upon the estate of Tobias Bradley, deceased, were issued to appellee, and she qualified as administratrix. On May 14, 1867, she filed in the county court inventories of the real and personal property of her intestate. In schedule "C," annexed to the inventory, the William Hughes note is listed, "principal $1500, interest $540." On October 10, 1872, appellee, "as administratrix of the estate of Tobias S. Bradley," brought suit in the circuit court against William Hughes upon said promissory note for $1500, and afterwards, on November 20, 1872, she dismissed her suit and judgment was rendered against her, as such administratrix, for costs, "and that this judgment be paid in due course of administration." The dismissal of the suit was in pursuance of a settlement

between appellee and Hughes whereby she surrendered the note to him and he transferred and delivered the bond for a deed to her. On February 21, 1880, Sarah Bradley, the insane sister-in-law of appellee, died intestate and without issue, leaving Cincinnatus Bradley, her brother, and Drucilla B. Fuller and Mary K. Gray, her sisters, as her only heirs-at-law. Thereafter Cincinnatus Bradley died intestate, leaving as his only heir-at-law, his son, William Bradley. Mary K. Gray died intestate on November 1, 1891, leaving children and grandchildren and one great-grandchild as her heirs-at-law. Drucilla B. Fuller is still living.

The bond for a deed, dated May 1, 1852, was never recorded, and it was not produced at the hearing. The amount due on the note dated May 1, 1852, at the time the suit brought thereon by appellee was dismissed, (November 27, 1872,) was, principal $1500, interest $951.50,— $2451.50 in all. No interest had been paid thereon by William Hughes or any other person subsequently to that due in advance on May 1, 1860. No final settlement was made of the estate of Tobias S. Bradley until the March term of the county court of Peoria county, in the year 1887. At that time, upon the application of appellee, an order was entered that she "take the said notes, bonds, moneys and personal property on hand, as per her report filed this day, viz., $467,176.85, as her own property, and that she be discharged from further duties and liabilities as such administratrix."

Appellee testified at the hearing that at the time of the transaction with Hughes, in November, 1872, $2451.50 was "fully as much as lot 29 was worth, and a little more." At the time of the commencement of this suit the lot was worth $40,000.

HENRY W. WELLS, for appellants.

HAMMOND & WYETH, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

Upon further consideration on a rehearing of this cause we are satisfied that the decree of the circuit court is based upon correct legal principles and sustained by the weight of authority, and should be affirmed. The appellee, widow of Tobias S. Bradley, deceased, took all of the personal estate after payment of the debts, and the Hughes note, given for the purchase money of the lot in question, was a part of the personalty and became her individual property. Gross' Stat. 1818-1868, chap. 109, p. 801, sec. 48; *Skinner* v. *Newberry*, 51 Ill. 203; Story's Eq. Jur. sec. 790.

In contracts for the sale of land the doctrine in equity is, that from the time of contract the vendor, as to the land, becomes a trustee for the vendee, and the vendee, as to the purchase money, a trustee for the vendor, who has a lien upon the land therefor. In equity the vendor is treated as the owner of the money, and is deemed to stand seized of the land for the benefit of the purchaser. Story's Eq. Jur. secs. 789, 790; *Lombard* v. *Chicago Sinai Congregation*, 64 Ill. 477; *Baldwin* v. *Pool*, 74 id. 97; *Sutherland* v. *Goodnow*, 108 id. 528; *Robinson* v. *Appleton*, 124 id. 276; *Kerr* v. *Day*, 14 Pa. St. 114; *Sparks* v. *Hess*, 15 Cal. 186; *Dorsey* v. *Hall*, 7 Neb. 460; *Church* v. *Smith*, 39 Wis. 492.

Appellee, as the owner of the Hughes note, was entitled to the full benefit of the purchase money under the bond for a deed of lot 29. Upon the payment of the purchase money to the owner and holder of the note Hughes could have obtained a decree for a specific performance of the contract, and he could have enforced conveyance of the legal title. Appellee, in the settlement with him, gave up her own property to acquire whatever rights he possessed to lot 29, and his remedies extended to her to secure the legal title.          *Decree affirmed.*