Marcella Crowley, Appellee, v. Patrick McCambridge et al. (Patrick McCambridge, Appellant), Consolidated with J. H. Alsdurf, Administrator, Appellee, v. Patrick McCambridge, Appellant.

## Gen. No. 5137.

1. ADMINISTRATION OF ESTATES—*what personal property.* Moneys due upon contracts for the sale of real estate made by a deceased party are to be considered a part of his personal estate even though no deed has been executed.

2. PRINCIPAL AND AGENT—*when death does not revoke power.* Held, under the facts of this case, the right to make delivery of a deed of real estate was more than a naked power and was not revoked by the death of the principal.

3. PRINCIPAL AND AGENT—*how payments must be made by one dealing with an agent.* A person dealing with an agent and knowing the extent of that agent's authority with respect to receiving payment, in order to protect himself must make payment to such

agent in such manner as conforms to the authority of such agent, but in equity, under the doctrine of subrogation, any payments made in a manner not conformable to the agent's authority, will be applied to the credit of the person making the same in so far as it appears that such payments have reached the proper source.

4. WILLS—*what testamentary disposition void.* A direction to make distribution after death is void under the statute of wills if such statute is not complied with in making such direction.

5. ACCOUNTING—*when case should be referred to master.* If it appears during the course of a chancery proceeding that a complicated account is to be stated, the court should refer the cause to a master to state such account.

6. JURISDICTION—*when, of court of chancery, cannot be questioned.* A party who has invoked the jurisdiction of chancery with respect to a particular subject-matter, cannot attack the jurisdiction of such court in exercising jurisdiction with respect to such subject-matter.

Bill in equity. Appeal from the Circuit Court of Grundy county; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in this court at the October term, 1908. Reversed and remanded. Opinion filed March 11, 1910.

A. C. NORTON and J. W. RAUSCH, for appellant.

CORNELIUS REARDON and C. V. HANSON, for appellees.

MR. JUSTICE THOMPSON delivered the opinion of the court.

Patrick Lamb made a contract in writing in duplicate under seal on July 9, 1902, to sell to John H. Kane the land for the partition of which the original bill in equity in this case was filed. Mary Lamb, wife of Patrick Lamb, executed the contract with her husband. At the time the contract was made Kane paid $1,000 to Lamb on the contract, and agreed by the contract to pay $19,000, the balance of the purchase money, on March 1, 1903, when the deed from Lamb was to be delivered to Kane. The $19,000 balance of the purchase money was to be paid by the purchaser assuming the payment of a $5,000 mortgage and a $1,000 mort-

gage with interest thereon from March 1, 1903, by giving to Lamb a mortgage for $4,000 which was to be a lien subject to the other mortgages, and by paying the remaining $9,000 in cash. On October 18, 1902, Kane sold to Patrick McCambridge his equity in the contract for $1,800 and made an assignment of his copy of the contract by an endorsement on the back of it which he signed, but the assignment is not under seal. McCambridge paid $450 to Kane on October 18, and paid the further sum of $550 on December 15, 1902, making up the $1,000 that Kane had paid on the contract, and was to pay the remaining $800 due Kane, being his profit in the deal, on March 1, 1903. The sale by Kane of his equity in the contract was made with the knowledge and consent of Lamb, who recognized the assignment as valid but would not release Kane from his liability. In October, on the same day that Kane assigned his equity in the land to McCambridge, Patrick Lamb and his wife executed a warranty deed to McCambridge of the land described in the contract, subject to the two mortgages then on the land which the grantee in the deed assumed and agreed to pay as part of the $20,000 consideration named in the deed. The evidence shows that at that time, in the presence of witnesses, Lamb delivered this deed to Kane and directed him to collect the unpaid purchase money on the contract and to then deliver the deed to McCambridge. When the deed was executed Lamb handed it to Kane, and some person suggested that it be placed in the safe of M. J. McGrevy, and Mrs. Lamb said she could take care of it as well as McGrevy. Kane put the deed in an envelope, sealed it, wrote something on the back of the envelope, and handed it to Mrs. Lamb, who put it in a bureau drawer in Lamb's house where Lamb, his wife, McGrevy and Kane then were. When Lamb handed the deed to Kane he said to him, "You take care of that, and if I am not here when this is to be delivered, if I am dead and gone, you receive the money and pay it out as I

have told you and turn the deed over to McCambridge.''

Kane testified that at that time Lamb said he wanted to settle all his matters and had arranged how the money was to be paid, and asked him (Kane) to see that his plan was carried out; that Lamb told him how the money was to be disposed of, and Kane asked him to put it in writing, and Lamb said he would later. A witness, McGrevy, was present when the deed was delivered to Kane and heard Lamb tell Kane to settle his accounts, but did not hear how the surplus was to be disposed of. Later, in February, 1903, Lamb sent for McGrevy and had him reduce the instructions to writing, which were signed by Lamb and witnessed by McGrevy. This paper was given to Mrs. Lamb, who placed it in the drawer in which was the deed; after Lamb's death, Kane, when he got the envelope with the deed from Mrs. Lamb, also got the written instructions. This paper appears to have been lost, but McGrevy and others testify to its contents. It was in the form of a will. Richard F. Lamb testified it was in substance ''To my son Richard F. Lamb I give and bequeath $2,400 and $500 additional for horses left upon the homestead by him when going west, total amount he is to receive $2,900. To my son M. H. Lamb $2,000. Dick, you know you had $1,000. Mike, you know you had $1,000. To my nieces Florence and Loretta Issler, I bequeath the sum of $500. To my niece Marcella Crowley I bequeath the sum of $1,000 to be paid after mother's death. There are $4,000 to remain in the land, notes of Patrick McCambridge drawing five per cent interest, and secured by mortgage on the land, to do with as she pleases.   *   *   *'' The oral instructions to Kane were in substance like those in writing, except that by the writing the Isslers and Mrs. Crowley are to be given something.

Patrick Lamb died on February 10, 1903. Kane on March 1, 1903, collected from McCambridge the remaining $800 that was to be paid to him for his equity,

and does not appear to have done anything further in the matter, except he states that a day or two after Patrick Lamb's funeral he delivered the deed and the written instructions to Richard F. Lamb, a son of Patrick Lamb, who lived at Slayton, Minnesota, to carry out Patrick Lamb's instructions.   Richard F. Lamb on March 3, 1903, delivered the deed to McCambridge after McCambridge had presented certain claims he held against Patrick Lamb, assumed the mortgages agreed to be assumed in the contract and paid to Richard F. Lamb the balance due on the contract by executing a note and mortgage for $4,000 to Mary Lamb, the widow of Patrick Lamb, and paying the remainder in cash.

In the settlement with McCambridge at the time the deed was delivered to him by Richard F. Lamb, McCambridge was allowed credit for $2,427.60 on six notes and interest thereon which he held against Patrick Lamb, two of these notes being executed by R. F. Lamb and Mary E. Issler, and these being the notes secured by the $1,000 mortgage mentioned in the contract.

Patrick Lamb was also indebted to other parties on notes or accounts which were paid by Richard F. Lamb out of the money received by him from McCambridge. These debts, with the expenses of the last illness and funeral expenses and the purchase of a tombstone, amounting in all to $2,404.25, were paid out of the purchase money by R. F. Lamb.   The Circuit Court allowed of these items $2,353.29.   A deduction of $50.96, of which appellant complains, was made from the total, either because of an error in adding or for some reason which may be explained by the evidence, but which is not pointed out by either side.   The following are the items from which the $2,353.29 was allowed:

"Claims and Expenses of Patrick Lamb paid
by Richard F. Lamb out of moneys re-
ceived from McCambridge.

| | |
|---|---:|
| Taxes ..................................$ | 88.40 |
| Funeral expenses........................... | 235.00 |
| Note to Beal and Renne signed by Patrick and Mary Lamb...................... | 750.00 |
| Interest on same.......................... | 17.95 |
| Note to W. S. Pierce...................... | 36.00 |
| Note of Patrick and Mary Lamb to Mrs. Kaylor ............................. | 300.00 |
| Interest on same.......................... | 17.00 |
| Paid milkman............................. | 6.00 |
| Expenses in clearing title................. | 27.00 |
| Fee paid W. J. Weldron................... | 20.00 |
| Money left with McGrevy for use of mother. | 300.00 |
| Bar bill to Mahaffey...................... | 6.00 |
| Patrick Welsh, borrowed money........... | 100.00 |
| Grundy Co. National Bank................ | 150.00 |
| Paid Harty for fuel...................... | 59.90 |
| Paid for tombstone....................... | 200.00 |
| Paid Dr. O'Malley........................ | 56.00 |
| Paid Father Green........................ | 10.00 |
| Paid McCambridge for loan made to mother during father's illness................. | 25.00 |
| | $2,404.25" |

Marcella Crowley, complainant, on December 6,
1904, filed the original bill in this cause for partition.
At the March term on June 27, 1905, after Kane and
McCambridge had filed an answer the complainant
made a motion to dismiss her bill, and on the eight-
eenth day of September, 1905, the defendant McCam-
bridge, made a cross motion to dismiss the bill for
want of equity. No action appears to have been taken
on these motions to dismiss. A cross bill was filed
September 7, 1906, by McCambridge in which all the
heirs of Patrick Lamb, the tenant, John H. Kane, and
J. H. Alsdurf, administrator of the estate of Patrick
Lamb, deceased, were made parties defendant. After

McCambridge filed his cross bill Mrs. Crowley, the complainant, on April 7, 1908, filed an amendment to her original bill and J. H. Alsdurf, administrator, joined as a complainant in the amended bill. McCambridge by filing his cross bill, and Marcella Crowley by filing her amended bill, waived their motions to dismiss the original bill. On April 6, 1908, the written entry of appearance of Michael H. Lamb and Richard F. Lamb was filed entitled in both the original bill and cross bill to the September term, 1906, submitting themselves to the jurisdiction of the court as if served by summons more than ten days before that term of court. Florence Issler and Loretta Issler, the minor children of Mary E. Issler, a deceased daughter of Patrick Lamb, were served by publication, and a guardian *ad litem* was appointed for them.

The amended bill alleged that McCambridge and Richard F. and Michael H. Lamb were conspiring to defraud complainant and the Isslers, and that there was due from McCambridge $13,000 and prayed in the alternative that if title be found to be in McCambridge, then that McCambridge and Richard F. and Michael H. Lamb be decreed to pay to the administrator any indebtedness owing by them to the estate, and sufficient of the balance due upon said purchase to pay (1) the debts allowed against the estate of Patrick Lamb and the costs of administration, (2) one-half the net returns from the sale after the payment of debts and costs of administration which belong to complainant Crowley and the Isslers.

The pleadings in the original bill and the amended bill neither charge nor plead that either Richard or Michael Lamb was indebted to their father. By the consolidation of the suit of the administrator against McCambridge and the administrator joining in the amended bill as a complainant, the entire McCambridge matter, including the collection of the money on the contract and the equitable distribution of the money, was placed under the jurisdiction of the chan-

cery court, but the collection of moneys loaned the
heirs by Lamb was not by the pleadings included in
such chancery proceedings.

In the *assumpsit* suit of the administrator against
McCambridge, a jury was waived and by order of
court that suit was consolidated with the chancery suit.
An order of default was entered against Richard F.
Lamb and Michael H. Lamb, as to both the amended
bill and the cross bill; and on April 7, 1908, by agree-
ment of the parties it was ordered by the court "that
the cross bill and the answer to the original bill stand
also as the cross bill and the answer to the amend-
ment to the original bill in this cause." Marcella
Crowley filed a replication to the answer of the de-
fendants, but no answer was ever filed to the cross bill
of McCambridge, nor was any order made concerning
any answer to the cross bill or replication thereto.
The consent order as to the cross bill standing as a
cross bill seems to be a misuse of terms.

To avoid unnecessary repetition reference is made
to the statement of the Supreme Court in Crowley v.
McCambridge, 237 Ill. 222, made in transferring this
case to this court, which very fully sets forth the con-
tents of the pleadings and the decree of the Circuit
Court.

Moneys due upon contracts for the sale of real
estate made by a deceased party are to be considered
a part of his personal estate, even though no deed has
been executed. Skinner v. Newberry, 51 Ill. 203; Ful-
ler v. Bradley, 160 Ill. 51; note to Bowen v. Lansing,
57 L. R. A. 649.

It is insisted that the delivery of the deed to Kane
by Patrick Lamb with the instructions to Kane re-
garding the delivery of the deed to McCambridge, and
the collection and distribution of the balance of the
purchase money, was an irrevocable appointment of
Kane as the agent of Lamb. It is contended that Kane
had such an interest in the subject-matter that the
death of Lamb did not revoke the agency.

"It is a well established rule that the death of the principal puts an end to an agency when the authority is not coupled with an interest, and no act of an agent subsequent to the death of the principal is binding upon the estate of the principal, for no one can do an act in the name of one who is dead." 1 Am. & Eng. Ency. of Law, 1222 (2d ed.); Turnan v. Temke, Exec., 84 Ill. 286. Meacham in his work on Agency lays down the following rules (sec. 205): "What interest in the agent will be sufficient to render the authority irrevocable is not easy of exact and comprehensive definition. Certain it is, however, that it is not any interest which will suffice. But it must be an interest or estate in the thing itself or in the property which is the subject of the power; the power and the estate must be united and co-existent, and generally, of such a nature that the power would survive the principal in such a way as to be capable of execution in the agent's name after the death of the principal." Section 241, "Where, however, the authority of the agent is coupled with an interest in the subject-matter of the agency, it is not terminated by the death of the principal and a subsequent execution of it by the agent will be good." "A power coupled with an interest, must create an interest in the thing itself upon which the power is to operate; the power and the estate must be united, or be co-existent, and this class of powers survive the principal and may be executed in the name of the attorney. Hunt v. Rousmanier, 8 Wheaton 174. Another class of powers is where they are created upon a valuable consideration and to operate as a transfer, mortgage or security, to another, although the power can only be executed in the name of the principal. * * * These are irrevocable by the act of the principal, for they are founded upon a sufficient consideration, and created to subserve purposes in which another has an interest." Bonney v. Smith, 17 Ill. 531; Gilbert v. Holmes, 64 Ill. 548.

McCambridge, when the contract was assigned to him

on October 30 still owed $1,350 to Kane, $550 of this
sum being money that Kane had already paid to Lamb
and $800 his profit in the deal. Kane, however, still
had another interest in the matter. When the deed
was made he desired to have Lamb release him from
the payments he had agreed to make on the contract.
Lamb refused to do this, saying ''I will have my con-
tract.'' The sum due Kane from McCambridge over
and above the amount due Lamb did not give Kane
any interest as agent in what was due Lamb, but the
payment of the $19,000 and the delivery of the deed
was a subject-matter in which Kane was vitally inter-
ested because he would thereby be relieved from lia-
bility on his contract. Lamb by executing the ·deed
and placing it in Kane's possession to deliver· on the
payment of the $19,000 placed Kane in a position
where he could carry out the contract, between Lamb
and himself, that had been assigned to McCambridge,
and thereby relieve himself from the liability he had
assumed. We are of the opinion that Kane had such
an interest in the subject-matter that the right to de-
liver the deed was more than a naked power and was
not revoked by the death of Lamb. However, it is not
material whether the agency to deliver the deed was
revoked by the death of Lamb or not, for the reason
that in equity McCambridge was entitled to the deed
on the payment of the money, and the parties have by
their pleadings confirmed the delivery of the deed.
The remaining question is, did McCambridge pay the
purchase price in such a manner as that equity will
relieve him from repayment.

Kane, having the right to deliver the deed, had the
right to collect the money that was due on the con-
tract as the agent of Lamb; he however had no right
to collect it in any other way than he was authorized
to. Whatever legitimate claims McCambridge had
against Lamb he was by law required to accept, but
he had no right to accept a note payable to any other
person than Lamb himself or to his legal representa-

tive. McCambridge paid in cash or its equivalent all of the $19,000 that remained due on the contract, except that he paid $4,000 by giving a note and mortgage to Mary Lamb due in ten years with interest at five per cent per annum.

McCambridge in making payments to an agent, was required to take notice of the power and authority of the agent, and to know and see that he made payments to the proper person. In place of paying to Kane, he made payments to Richard F. Lamb, by drafts payable to the order of Richard F. Lamb, and if Lamb misappropriated the money, which was improperly placed under his control by McCambridge, McCambridge remains liable on the contract as though payment had not been made. A court of chancery will, however, give appellant credit under the doctrine of subrogation for all money paid by him that has ultimately reached the parties it would have been paid to in due course of administration. The statement made by Lamb when the deed was delivered to Kane, "If I am not here when this is to be delivered, if I am dead and gone you receive the money and pay it out as I have told you," shows that if Lamb should be living when the money was paid Kane would have nothing to do with the distribution, and demonstrates that the direction to Kane to collect and distribute the fund was in the nature of an attempted testamentary disposition by Patrick Lamb of his estate. The disposition not complying with the law concerning wills, was revoked by the death of Lamb. Barnum v. Reed, 136 Ill. 388; Garber v. Myers, 32 Ill. App. 175; Benner v. Bailey, 234 Ill. 82; Oswald v. Caldwell, 225 Ill. 224.

The summary of the items allowed by the decree as payments properly made is:

Ray mortgage assumed....................$5,000.00
Notes of Patrick Lamb, including the Richard F. Lamb mortgage notes............. 2,427.60

Debts and expenses of Patrick Lamb paid out
    of purchase money....................:..... 2,353.29

Total allowed as credits to McCam-
    bridge .........................$9,831.85

The court refused to allow credit for the $4,000
mortgage taken to Mary Lamb, and refused to allow
credit for the moneys paid to Richard F. Lamb which
had not been paid out in the payment of claims against
the estate of Patrick Lamb, but did allow credit for
money paid to Michael H. Lamb that would have been
finally paid to him by the administrator.

The proof shows that on the day Mary Lamb died
this note was transferred by her to Richard F. and
Michael H. Lamb, who afterwards assigned the note
and mortgage to parties in Minnesota who have since
that time collected the greater part of the note from
McCambridge.

There was no authority vested in Kane or Richard
F. Lamb to take a note to Mary Lamb in payment of
part of the money due on the contract, and McCam-
bridge had no right to pay in that way, and credit for
this was properly refused, unless in equity Mary Lamb
had some claim on her husband's estate, in which event
McCambridge might be subrogated to her right. The
widow Mary Lamb was legally entitled to one-third of
the personal estate. Mrs. Lamb received the $4,000
note given by McCambridge, and while in law Mc-
Cambridge had no right to give it to her, yet, in equity
he will be subrogated to her rights and given credit
for all payments which were received by the proper
distributees, so far as they were entitled to payment
from the money in McCambridge's hands or from
debts due from the heirs that were collectable by
charging against the heirs the debts due from them to
the extent of their distributive share of the balance
due on the contract.

It is argued that Mary Lamb was entitled to a

widow's award from the estate of her husband, and that McCambridge should be subrogated to her rights therein.   There is no proof that any award has ever been set off to her and a court of chancery has no means of making such an allowance.   Should an award ever be set off to her, she being deceased, it would go to the same parties that the estate of Patrick Lamb descends to.   The appellant having made payments wrongfully must of necessity pay again all sums that have not been paid to parties to whose rights he may be subrogated, and he must be relegated to his remedy, if any, against the parties to whom he has wrongfully paid.

The evidence shows that in April, 1890, Patrick Lamb and his wife had by a deed conveyed the land described in the bill to Richard F. Lamb and Mary E. Lamb (Issler).   In July, 1897, Richard F. Lamb and Mary E. Issler, executed two notes for $500 each to Patrick McCambridge and secured the said notes by a mortgage on forty acres of said land; these notes and the mortgage constitute the $1,000 mortgage described in the Kane contract.   In April, 1899, Richard F. Lamb and Mary E. Issler, executed a note for $5,000 to Julia N. Ray and secured the same by a mortgage on the remaining 160 acres of the said land.   This is the $5,000 note and mortgage described in the Kane contract.   In June, 1902, Richard F. Lamb and Mary E. Issler in consideration of $1 reconveyed the said land by a warranty deed to Patrick Lamb.   There is also proof that within a year prior to his death Patrick Lamb had given or loaned $1,000 to Richard F. Lamb and a similar amount to Michael H. Lamb.   There is no proof in the record of any other loans by Patrick Lamb to Richard F. or Michael H. Lamb.   On this proof the court found that Richard F. Lamb was indebted to Patrick Lamb $6,039.56 and Michael H. Lamb was indebted to Patrick Lamb in the sum of $1,000, and neither Richard F. Lamb nor Michael H. Lamb raise any question over such finding.   There is noth-

ing in the record showing how the court arrived at the finding that Richard F. Lamb owed his father $6,039.56 except as it may be inferred that it is composed of the notes and mortgages against the land.

The deed from Richard F. Lamb and Mary E. Issler to Patrick Lamb appears to be for a merely nominal consideration. The question whether the effect of such a deed is that if the consideration therein expressed is the true consideration, the grantors were under an obligation to clear the property from the encumbrance, is not presented by appellant. Neither the moneys advanced or loaned, if any, to Richard or Michael or any other heir are mentioned in the pleadings, except that there is a prayer in the amended bill that Richard and Michael pay to the administrator any indebtedness owing by them. Neither the amended bill, cross bill or answer contains any allegations on which any evidence could be admitted as to any debts or advancements made by Patrick Lamb to any of his children, and therefore the decree cannot be sustained in those respects where it affects the appellant.

It is contended by appellant that Patrick Lamb remained in possession of the land while the title was in Richard F. Lamb and Mary E. Issler and recognized these mortgage debts as his own from the time they were given, and that if they are a debt of Richard F. Lamb they are equally the debt of Mary E. Issler, and that if Richard F. Lamb is to be charged with this indebtedness then the Isslers should be charged with the portion that would have been chargeable against Mary E. Issler, to the extent of any portion they otherwise would have received.

It is insisted that the court erred in not finding that the moneys paid to Richard F. Lamb and Michael H. Lamb by Patrick Lamb, "were gifts or advancements from said Patrick Lamb to his children and not loans or charges against them." If they were gifts then they should not be given any consideration in this cause, but if they were advancements or debts then

they should be considered if there were proper allega-
tions in the bill to present such matters for adjudica-
tion. The rule in this state is that grandchildren take
*per stirpes*, or in right of their parents, and they take
subject to advancements to the parents, and this prin-
ciple applies to debts as well as to advancements.
Woerner on Administration, sections 554 and 71;
Simpson v. Simpson, 114 Ill. 603; Kershaw v. Ker-
shaw, 102 Ill. 307; Statutes of Ill., chap. 40, section 8.
There is but little evidence in the record concerning
the nature of the transactions between Patrick Lamb
and his children. Since this case must be reversed and
the pleadings may be amended and other evidence may
be produced, we express no opinion as to whether the
sums of $1,000 paid to Richard and Michael Lamb by
Patrick Lamb shortly before his death were gifts, ad-
vancements or loans.

The indebtedness for which the notes and mort-
gages were given appears to be the joint indebtedness
of Richard F. Lamb and Mary E. Issler. If these
notes are to be taken into account in the division of
the proceeds of the sale of this land against Richard
F. Lamb when the Isslers also should account for the
portion received by their ancestors before they receive
anything further, and the court should hold the same
rule applicable to Richard F. Lamb and the Isslers to
the extent of the portions of the estate that should be
received by them. But it is contended that Richard
F. Lamb cannot be charged with the mortgage indebt-
edness on the land because Patrick Lamb had made
the debts his own and the deed, although a warranty
deed, was for the consideration of $1. The evidence
as to Patrick Lamb's statements when he executed the
deed to McCambridge and when he made the written
memoranda as to how he desired his property distrib-
uted shows that he did not consider anything was due
him because of the mortgages on the land. If the con-
sideration named in the deed made by Richard F.
Lamb and Mary E. Issler was the true consideration

then although the mortgages on the land were a breach of the warranty all that the grantee could recover from the grantors is the consideration paid with interest. 8 Am. & Eng. Ency. of Law 172 (2d ed.); Wood v. Kingston Coal Co., 48 Ill. 356; Weber v. Anderson, 73 Ill. 439; Martin v. Martin, 164 Ill. 640.; Lloyd v. Sandusky, 203 Ill. 621. As the evidence now stands if the pleadings had alleged an indebtedness from Richard Lamb to Patrick Lamb, still he could not be charged with the mortgage indebtedness, and the court erred in charging him with any part of such indebtedness to the prejudice of appellant.

The proof also shows that when Mary Lamb, the widow, died, she and the Issler children were living at Sioux Falls, South Dakota, with Michael H. Lamb. It also shows that Michael H. Lamb was appointed guardian of the Issler children by the Probate Court of Minnehaha county, South Dakota, where they were then living; that Michael H. Lamb qualified and gave bond as such guardian, and as guardian for the Issler children received from Richard F. Lamb $1,000 of the purchase money received from McCambridge. The Circuit Court refused to allow this as a credit to McCambridge. We see no reason why this should not be allowed to him.

The interest on the $5,000 mortgage to Julia Ray that had accrued to March 1, 1903, being $225, was paid on April 6, 1903, the day it became due, by J. W. Rausch out of the moneys Lamb received from McCambridge, and Rausch appears to have been acting for McCambridge and Richard F. Lamb. This mortgage was assumed by McCambridge as a part of the purchase price, and McCambridge should have been allowed credit for the interest so paid.

J. H. Alsdurf was appointed administrator of the estate of Patrick Lamb in June, 1905. The only claim presented against the estate of Patrick Lamb so far as the record shows is one for $51.28. This claim as presented in the Probate Court shows that $8.25 was

for the services of an attorney in the matter of a title to land more than a year before the death of Lamb, and $42 for making an abstract subsequent to the death of Lamb. The administrator however consented to the allowance of the claim. The evidence of the administrator is that $1,200 is required to pay his commission, for his surety bond, and the claims allowed his attorney, who is the same attorney who represents Mrs. Crowley.

The trial court, when it appeared there were so many items for which McCambridge claimed and was entitled to credit in equity and that a complicated accounting must be had, should have referred this cause to the master to state the account. Mosier v. Norton, 83 Ill. 519; Ennesser v. Hudek, 169 Ill. 494; Garlick v. Mutual Loan Assn., 129 Ill. App. 402. The stating of the account entails on the trial court a large amount of unnecessary work, and this court is unable to tell how the court arrived at the sum of $2,353.29, the amount of debts of Patrick Lamb paid by Richard F. Lamb.

The decree ordered Richard F. Lamb to pay to the administrator for the use of Mrs. Crowley and the Isslers one-half of the indebtedness over his inheritance owing to his father at the time of his death, with interest, making a total of $1,246.61. The decree further found and ordered that the administrator should recover from McCambridge for the use of Mrs. Crowley and the Isslers the amount inherited by them from the estate of Patrick Lamb. The court found the estate consisted of $11,572.40 balance owing from McCambridge to Patrick Lamb on March 1, 1902, and the $6,039.50 owing by Richard F. Lamb to Patrick Lamb and the $1,000 owing by Michael H. Lamb to Patrick Lamb, one-half of the net value of which the court found to be $8,129.30 less $987.42, one-half of the amount still owing the estate by Richard F. Lamb after crediting him with his distributive share on his indebtedness, making a balance of $7,141.88, with legal

interest from March 1, 1903, a total of $9,016.62 to be recovered by the administrator from McCambridge for the use of Mrs. Crowley and the Isslers, and that the administrator should recover from McCambridge the further sum of $600 being the part of the debts and costs of administration that the shares of Richard and Michael Lamb should bear. The decree ordered that McCambridge should recover of Richard and Michael Lamb $9,016.62, and said $600, and such further sum as he should have to pay as costs of this proceeding, and if the administrator should not require the sum of $600 with which to pay half the debts and expenses of administration, then that the estate refund to Mc-Cambridge such part of said sum of $600 as should not be so expended.

The court applied the entire share of Richard F. Lamb on his indebtedness to the estate and makes Mc-Cambridge pay the same for the benefit of the other heirs, and then orders McCambridge to pay $300 of it—one-half of the $600—to the administrator for the payment of debts and expenses of administration. If all of Richard F. Lamb's share was properly ordered to be applied on his indebtedness to the estate, then McCambridge should not be ordered to pay it again to be applied on other debts, and it is also manifest that he should not be ordered to pay money to the administrator to pay commissions on moneys that never came to the hands of the administrator. The administrator is entitled to commissions only on money and property that comes into his possession and the commissions on the money that comes into his hands are paid out of such money.

By the 15th, 19th and 22d assignments of error, it is insisted that the court invaded the province of the Probate Court in making an order distributing the moneys due from McCambridge amongst the heirs, and that the court had no jurisdiction in chancery. Inasmuch as the appellant filed a cross bill praying for relief from the hardship he had brought on himself, by

not paying the purchase money to the proper party, he cannot be heard to insist that the Circuit Court did not have jurisdiction. The appellant is not entitled to have the administrator enjoined from prosecuting the suit at law, unless the court at the same time decrees that he do equity by paying to the administrator all moneys that have been diverted from the proper distributees by his unauthorized acts. With the distribution of the purchase money due from appellant he is not concerned further than where he is entitled to be subrogated to the rights of the distributees.

The court erred in not giving McCambridge credit for the interest on the Ray mortgage up to March 1, 1903; in not giving Richard F. Lamb credit for the payment of $1,000 to the guardian of the Isslers; in not giving McCambridge credit therefor and in charging the Isslers therewith; in charging up any part of the mortgage indebtedness against Richard F. Lamb because the evidence shows the deceased did not hold it as a debt against his son; in charging up against Richard F. Lamb and Michael H. Lamb the sums the court found they owed the estate, and thereby affecting McCambridge's rights without there being any allegations in the pleadings on which to sustain such findings; and in not finding that Mrs. Lamb took by the statute of descent one-third of the personal estate of her deceased husband; and in not finding that McCambridge is entitled to credit for so much of the $4,000 note as she was entitled to receive from the moneys collected from McCambridge, that remains for distribution after the payment of debts; and in ordering that McCambridge pay to the administrator the portion of the debts and expenses that Richard F. Lamb should pay when already all the share of Richard F. Lamb had been applied on the payment of what the court found he owed the estate. However, since it appears that Richard F. Lamb cannot be charged with the mortgage indebtedness and he will be entitled to a portion of the proceeds of the sale to McCambridge

he will be charged with his portion of the debts allowed against the estate and costs of administration.

The decree is reversed and the cause is remanded with leave to the parties to amend their pleadings if they shall be so advised. Upon another hearing and on an interlocutory decree fixing the basis for an accounting not inconsistent with this opinion the cause should be referred to the master with directions to take proofs and state an account between the parties and to report the proofs and the accounts so stated to the court.

*Reversed and remanded.*